UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. TETRAULT,<br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>  Defendant. | Civ. Action No. 09cv11390-NG |

GERTNER, D.J.

## MEMORANDUM AND ORDER
February 11, 2011

### I. INTRODUCTION

Plaintiff John Tetrault ("Tetrault") appeals the Social Security Administration's ("SSA") denial of Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. Tetrault claims disability based on back, wrist and neck pain, and depressive disorder. In determining that Tetrault was able to work, the Administrative Law Judge ("ALJ") found that Tetrault had a residual functional capacity ("RFC") that allowed him to perform certain kinds of unskilled light and sedentary work. Tetrault argues that the ALJ's determination that there were jobs in the marketplace that Tetrault could perform was not supported by substantial evidence. Specifically, he challenges the vocational expert's ("VE") testimony. The VE testified to jobs within the regional economy that Tetrault could perform, but did not cite to the Dictionary of Occupational Titles, U.S. Department of Labor, Employment Training Administration (1991) ("DOT"). The VE offered categories of jobs, categories including jobs that Tetrault may not be able to perform. While imprecise, this type of testimony is allowed under the law.

However framed, the evidence suggests that there are thousands of jobs for which Tetrault is perfectly well-suited and that match his capacity.  Because there are jobs he can perform, I find that Tetrault does not have a successful claim for reversal.  Consequently, Plaintiff's Motion For Order Reserving the Decision of the Commissioner (document #16) is **DENIED** and Defendant's Motion for Order Affirming the Decision of the Commissioner (document #18) is **GRANTED**.

## II.  BACKGROUND

### A.  Tetrault's Pain Allegations

Tetrault is a 45-year-old man who claims that, among other things, flare-ups of degenerative disc disease in his neck have kept him from working on a regular and continuing basis since May 9, 2006.  Administrative Record ("A.R.") at 28-29.  Tetrault testified that the pain is so severe when it flares up that pain medication offers only minimal relief.  Id. at 32-33.  Tetrault was taking multiple kinds of prescribed and over-the-counter medication in an attempt to control the pain, although he discontinued use of some of them, particularly Vicodin, for fear of developing an addiction.  Id. at 33.  The medications were also causing Tetrault to experience fatigue and drowsiness.  Id. at 50.

As a child, Tetrault was seen at Children's Hospital for lower back pain and an inability to walk.  Id. at 17.  Tetrault reports that since that time, he has experienced chronic lower back pain, and since age fifteen, neck stiffness that waxes and wanes.  Id.  He has neck pain radiating into his head that causes severe headaches.  Id.  Tetrault also reports left arm pain with paresthesia, usually worse after lifting.  Id.  While he was employed, he was often late for work due to sleeping poorly through the night and sleeping through his alarm.  Id.  Tetrault's

headaches are now more controlled than in the past, but occasionally they last from two to three days.  Id. at 35, 54.  Tetrault related that he experienced numbness and tingling in his hands because of his carpal tunnel syndrome and sometimes had difficulty grasping things; he wore splints at night for this impairment.  Id. at 30-31.

Tetrault testified that on a typical day, he watches some television programs, sits at the computer for **only** 30 to 40 minutes because the pain becomes too much, and then watches television with his son when he gets home from school.  Id. at 32.  He naps during much of the day because of his inability to sleep through the night.  Id. at 39.  He tried to play his guitar once but had to stop because of the neck pain.  Id. at 34.  He takes care of household chores (cooking, laundry, washing dishes) but can only do a little at a time because of pain in his neck, back, or hands.  Id. at 36.  He drives a car sometimes and his son helps him with the shopping.  Id. at 49.

Tetrault is a high school graduate and he has in the past worked as a janitor, maintenance worker, quality control inspector/manager, turret driver, and ship chandler.  Id. at 22.

### B. Medical Records and Opinions

Tetrault submitted reports and treatment records from his primary care physician, Dr. Anne Bauman, and more than nine other treating physicians.  SSA obtained a physical RFC assessment from Dr. Walter Harrison and a mental RFC assessment from Dr. Michael Maliszewski, neither of whom examined Tetrault.  Id. at 266-73, 289-92.

The medical records describe a history of C5-C6 disc herniation, cervical radiculopathy, degenerative disc disease, multiple upper back and neck trigger points associated with muscle spasm and decreased range of motion, and carpal tunnel syndrome.  Id. at 218, 235, 245, 314.

The records also show a history of a major recurrent depression and compulsive personality. Id. at 265.

Treatment for Tetrault's symptoms was varied. For his wrist pain, Tetrault was offered corticosteroid injections, as well as continued splinting and occupational therapy as appropriate treatment. Id. 218. For other symptoms, he was prescribed Verapamil, Flexeril and Vicodin (for pain). Id. at 251, 336.

Tetrault was fired from his job on May 1, 2006, because of apparent drowsiness on the job caused by the medication. Id. at 253. Surgery was discussed on multiple occasions, but Tetrault said that he was not ready and declined surgery. Id. at 245-46. Tetrault also declined occupational therapy, on account of the cost. Id. at 220.

In January 2007, Dr. Harrison, a physician who reviewed the evidence in the record for Disability Determination Services ("DDS"), concluded that Tetrault could occasionally lift twenty pounds, frequently lift ten pounds, stand, walk, and sit for about six hours each in an eight hour work day, occasionally climb, balance, stoop, kneel, crouch, and crawl, and was limited to occasionally grasping and turning with his hands. Id. at 267-269. Dr. Maliszewski, a psychologist who reviewed the mental health records for DDS, concluded Tetrault was moderately limited in many ways, including his ability to understand and remember detailed instructions, maintain regular attendance, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace. Id. at 289-90. He further stated that Tetrault was capable of performing simple tasks, and his mood would not prevent him from performing concrete tasks in a structured work setting. Id. at 291.

### C. Procedural History

Tetrault filed an application for SSDI and SSI benefits on November 5, 2006, claiming that his period of disability began on May 1, 2006. Id. at 127-132, 135-141. His application was initially denied by the Office of the Federal Reviewing Official on May 7, 2007. Id. at 64-74, 83-89. On May 9, 2008, Tetrault requested a hearing before an ALJ, which was held on January 29, 2009. Id. at 25, 95. On February 10, 2009, the ALJ issued a written decision finding that Tetrault was not eligible for benefits. Id. at 11-24. The denial of benefits became final on May 13, 2009, when the Decision Review Board affirmed the ALJ's decision. Id. at 7-10. Tetrault filed a timely appeal in District Court on August 20, 2009 (document 1).

At the ALJ hearing, Tetrault testified as to the course of his symptoms and his functional limitations, including his inability to work when flare-ups of degenerative disc disease completely incapacitated him for days at a time. Id. at 28-29, 53-54. A medical expert, Edward Spindell, M.D. testified that the records showed the plaintiff had multi-level degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome without denervation, a stable brain aneurysm, headaches, depression, and a compulsive personality. Id. at 43. He agreed with the non-examining DDS physician, Dr. Harrison, that the plaintiff would be limited to light exertion with occasional climbing, crawling, crouching, stooping, kneeling, and balancing, and occasional grasping and turning. Id. at 44-45.

A VE, Michael LaRaya, testified that jobs were available for someone of Tetrault's background who could perform unskilled light or sedentary work with moderate limitations in ability to sustain concentration, persistence and pace such that he had the ability to understand,

remember, and carry out simple one, two, three step tasks not involving independent judgment over an eight hour day with appropriate breaks. Id. at 56.

In her decision, the ALJ employed the standard five-step evaluation process used to determine if an individual is disabled within the meaning of the Social Security Act, noting that only the final element was at issue in this case.[1] 20 C.F.R. § 416.920. All five steps are not applied to every applicant, as the determination may be concluded at any step in the process. Id. The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted. Id.

At step one, the ALJ determined that Tetrault had not been engaged in substantial gainful activity since May 1, 2006. A.R. at 16. At step two, she held that Tetrault had the following severe impairments: carpal tunnel syndrome, degenerative disc disease of the cervical spine, major depressive disorder, compulsive personality disorder, and headaches. Id. At step three, the ALJ determined that Tetrault's combination of impairments did not meet or equal an entry in the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). Id. at 19. Before beginning step four,

---

[1] Before beginning the five-step process, the ALJ first determined that Tetrault met the insured status requirements of the Social Security Act through December 31, 2008. A.R. at 16.

the ALJ determined Tetrault's RFC. She found that Tetrault could perform light work over an eight-hour workday, with appropriate breaks, with the following specifications:

Non-exertional limitations of occasional climbing, crawling, crouching, stooping, kneeling, balancing

- Occasional handling/grasping/turning

- Un exposure [sic] to unprotected heights/dangerous equipment

- Moderate limitation in concentration, persistence and pace, such that he can understand remember and carry out simple 1-2-3 tasks not involving independent judgment making over an eight hour workday with appropriate breaks

- Moderate limitation in social interactions, requiring an object or material focused job that entails minimal work related interactions with supervisors, coworkers and the public.

Id. at 19-20. At step four, she determined that Tetrault did not have the RFC to perform the requirements of his past relevant work as a janitor, maintenance employee, quality control inspector/manager, turret driver, or ship chandler. Id. at 22. And finally, at step five, the ALJ determined that, given Tetrault's RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that he could perform. Id. Therefore, Tetrault was not eligible for benefits between the alleged onset date, May 1, 2006, through the date of the ALJ's decision, February 10, 2009. Id. at 23.

Only this fifth step -- the determination that there are a significant number of jobs that Tetrault could perform -- is challenged by Tetrault. Pl.'s Mem. of Law in Supp. of Reversal of Comm'r's Den. of Benefits ("Pl.'s Mem.") (document #17).

**III.     STANDARD OF REVIEW**

Courts review administrative decisions for correct application of legal standards and to ensure that factual determinations are supported by substantial evidence. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing 42 U.S.C. § 405(g); Sullivan v. Hudson, 490 U.S. 877, 885 (1989); Richardson v. Perales, 402 U.S. 389, 401 (1971)). A conclusion is based on substantial evidence where a reasonable person could deem the evidence adequate to support a conclusion. Richardson, 402 U.S. at 401 (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence cannot be marshaled by ignoring inconsistent evidence or making judgments reserved to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). While substantial evidence may support a competing conclusion, the ALJ's conclusion stands as long as it is supported by substantial evidence. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987). Some courts understand deference to the factual conclusions of ALJs to preclude courts from providing a factual foundation or rationale for an ALJ's decision when the ALJ did not adequately specify it. See Coggon v. Barnhart, 354 F. Supp. 2d 40, 59 (D. Mass. 2005); See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (requiring an ALJ to provide a "logical bridge" between the evidence and his conclusion).

**IV.     ANALYSIS**

The ALJ found that Tetrault's claim failed at step five because the ALJ determined that there were a number of jobs available to Tetrault in the regional economy that he could perform. A.R. at 22. After Tetrault had proven that he could not perform his past relevant work, the burden of proof at this step shifted to the Commissioner to show that Tetrault could work. See

Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989). To carry that burden, the Commissioner must come forward with evidence of specific jobs in the national economy that the applicant can still perform given his determined RFC. Id.

In this case, the Commissioner produced the testimony of a VE. A VE's testimony qualifies as substantial evidence if it corresponds to conclusions drawn by medical authorities regarding the plaintiff's RFC.[2] See, e.g., Stephens v. Barnhart, 50 Fed. App'x. 7, 11 (1st Cir. 2002). The VE testified that, given education, age and other factors, and Tetrault's RFC, Tetrault would be able to perform the requirements of many *unskilled occupations*[3] at the *light*[4] and *sedentary*[5] exertional levels. A.R. at 23. The examples provided of representative *light* exertional level occupations were packager (with 1,200 positions), machine tender (with 900 positions), and production inspector (with 1,400 positions).[6] Id. The examples provided of representative *sedentary* exertional level occupations were machine tender (with 400 positions),

---

[2] SSA obtained a physical RFC assessment from Dr. Harrison, who did not examine Tetrault. A.R. at 266-73.

[3] The DOT lists a specific vocations preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, "unskilled" work corresponds to an SVP of 1-2 in the DOT. SSR 00-4P, 2000 WL 1898704, at *3. The government argues that jobs which are semiskilled (SVP of 3-4) may still fall into Tetrault's RFC, but that analysis is unnecessary, given the availability of jobs within the unskilled category.

[4] Light work is defined as work that involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a "good deal" of walking or standing, or, if the work involves sitting most of the time, some pushing and pulling of arm or leg controls. A person capable of performing light work can also perform sedentary work, unless there are additional limiting facts such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b); 416.967(b).

[5] "Sedentary" work is defined as work that involves lifting no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; and requiring only occasional walking and standing. Id. §§404.1567(b); 416.967(b).

[6] These numbers represent available jobs in the Rhode Island and Southeastern Massachusetts area.

production inspector (with 750 positions), packaging (with 500 positions), and security (with 850 positions).[7] Id.

### A. Availability of Jobs within Tetrault's RFC

Tetrault argues that this testimony did not amount to substantial evidence because the VE and ALJ did not provide the codes from the DOT for the jobs that Tetrault allegedly could perform. Pl.'s Mem. at 16. While the DOT codes are often used as evidence in ALJ decisions, they are not necessarily required. Here, the VE and the ALJ offered seven types of jobs that Tetrault could perform without any reference to the DOT. In Edwards v. Sec'y of Health & Human Servs., the First Circuit held that providing only general job titles, without DOT codes, was acceptable to determine the availability of jobs in the economy. 1994 WL 481140, *2 (1st Cir. 1994). While the lack of DOT codes may make it more difficult to assess whether or not the VE's testimony is accurate, it is not a per se violation. To be sure, the court in Edwards noted that a clear dichotomy between the DOT and the VE's testimony may call into question the sufficiency of the evidence. Id. at *3. Further, the court noted that courts have vacated decisions where the VE's testimony is contradicted in its entirety by the DOT and the only reasonable explanation seems to be that the VE made a mistake. Id. Here if Tetrault was correct that none of the representative positions provided by the VE actually fell within his RFC, there may not have been sufficient evidence to justify the ALJ's decision that Tetrault is able to work. However, that is not the case.

---

[7] Note that if Tetrault could perform an occupation at the "light" level, he could also perform it at the "sedentary" level. For that reason, the three "light" occupations appear at the "sedentary" level, with one additional occupation. The VE apparently believed Tetrault could only perform security work at the "sedentary" level, not at the "light" level.

The VE provided three representative jobs at the unskilled *light* level of exertion (packager with 1,200 positions, machine tender with 900 positions, and production inspector with 1,400 positions), and four representative jobs at the unskilled *sedentary* level of exertion (machine tender with 400 positions, production inspector with 750 positions, packaging with 500 positions, and security with 850 positions). A.R. at 23. Since many of these job titles do not appear in the DOT, Tetrault argues that it is impossible to determine whether he might be qualified for them. Worse, he claims, jobs in the DOT that appear to be similar to job titles provided by the VE do not fall within his RFC. Pl's Mem. At 16-17.

The Plaintiff's argument, however, assumes that the VE found that Tetrault could perform only four[8] *specific* jobs, rather than four occupational categories consisting of many individual specific jobs. I assume, however, that the VE expressed general, more encompassing occupations that actually include many individual job titles specified in the DOT. While Tetrault correctly points out that there are positions within the occupations provided by the VE that do not fit his RFC, there are, in fact, many jobs that *do* fit Tetrault's RFC within the categories provided. For example, while Tetrault points out that no specific job appears in the DOT titled "packager," "hand packager" does appear in the DOT and is performed at a medium level of exertion, thus outside of Tetrault's capacity. Pl.'s Mem. at 16. However, the job of "bottle packer" (DOT code 920.685-026), likewise within the general category, is performed at the unskilled light level of exertion.[9] So while some jobs within the occupations provided by the VE

---

[8] Note that only four occupational categories were actually listed by the VE – three of them were listed twice – because those occupational categories had jobs within them that could be performed at more than one level of exertion, light and sedentary.

[9] This same analysis can be performed for all of Tetrault's arguments regarding specific jobs that do not fit the occupations provided by the VE. For all categories, some specific job titles will not match, but many will.

do not fit Tetrault's RFC, many do.  As such, there is not such a discrepancy between the VE's testimony and the DOT as to challenge the validity of the VE's conclusion.

It is the case that the VE may have overestimated the number of jobs in the regional market available to Tetrault, given that the occupational categories include specific jobs for which he is not qualified. (Tetrault may be required to work only if there are sufficient positions in the marketplace).  However, the Commissioner must only prove that some jobs are available to the plaintiff; there is not a magic, sufficient number.  In fact, courts have found sufficient numbers of jobs to exist in the local or regional economy at levels as low as 200.  E.g., Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding 200 jobs in region sufficient); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (finding 174 jobs in local area, 1,600 jobs statewide, 80,000 jobs nationwide sufficient).  There is no evidence that the numbers provided by the VE were inaccurate to begin with, and certainly not to an extreme degree.

### B. Duty of ALJ to Inquire Whether There Are Conflicts Between VE Testimony and DOT

Finally, Tetrault argues that when a VE provides evidence about the requirements of a job or occupation, Social Security Ruling ("SSR") 00-4p states the adjudicator has an affirmative responsibility to ask about possible conflicts with information provided in the DOT.  Pl.'s Mem. at 17.  In this case, the ALJ did not specifically ask the VE if there were any conflicts between his testimony and the DOT, but included in her decision that "pursuant to SSR 00-4p, the vocational expert's testimony is consistent with information contained in the Dictionary of Occupational Titles."  Id. at 23.

Tetrault cites a Third Circuit opinion, Boone v. Barnhart. 353 F.3d 203 (3d Cir. 2003), in which the VE's testimony was squarely at odds with the DOT.  Id. At 206.  Nevertheless, the VE

offered no explanation for the conflict, and the ALJ did not question the conflict.  Id.  The court held that, while it is reasonable for a VE's testimony to sometimes contradict the DOT, if the ALJ chooses to accept the VE's testimony over the DOT, the ALJ must elicit a reasonable explanation for the apparent conflict on the record, and explain in his decision how the conflict was resolved.  Id. at 209.

Here, however, there was no apparent conflict with the DOT.  An ALJ's failure to ask a VE about a possible conflict between his or her testimony and the DOT is harmless unless there actually was a conflict.[10]  Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).  To remand the case because a question was not specifically asked by the ALJ would be an exercise in futility.  Had the ALJ asked the question, she would have determined there was no conflict.  If a remand will amount to no more than an empty exercise, the decision should be affirmed.  See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000).

## V.   CONCLUSION

The ALJ had sufficient evidence to determine that Tetrault was not disabled.  I therefore **DENY** Plaintiff's Motion For Order Reversing the Decision of the Commissioner (document #16) and **GRANT** Defendant's Motion for Order Affirming the Decision of the Commissioner (document #18).

**SO ORDERED.**

**Date:  February 11, 2011**              /s/ Nancy Gertner
                                           **NANCY GERTNER, U.S.D.J.**

---

[10] Additionally, the language of SSR 00-4p implies that such an affirmative duty on the part of the ALJ, if it exists, is only triggered when the VE provides evidence about the requirements of a job or occupation.  SSR 00-4p, 2000 WL 1898704, at *4; See also Jackson v. Barnhart, 120 Fed. App'x. 904, 905-06 (3d Cir. 2004).  This was not done here – the VE did not testify about the specific requirements of the representative positions – he only listed them.  A.R. at 55-57.